# Richmond

FRED D. LEWIS

v.

COMMONWEALTH OF VIRGINIA

No. 1000-91-2

Decided November 17, 1992

COUNSEL

John M. Williamson, for appellant.

Oliver L. Norrell, III, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—The sole issue in this appeal is whether the evidence was sufficient to prove beyond a reasonable doubt that Fred D. Lewis attempted to deliver marijuana to a prisoner in violation of Code § 18.2-474.1. We reverse the conviction.

I.

The evidence proved that the Commonwealth's primary witness, Kenneth W. Silvey, was incarcerated in the James River Correctional Center serving a sentence of thirty years for felonies of rape and sodomy. Silvey testified that he obtained large quantities of money through illegal transactions with other prisoners and kept money in the correctional facility contrary to regulations. He asserted that Lewis, a prison guard, noticed his abundance of money and, in the summer of 1990, offered Silvey the opportunity to make more money by selling marijuana. Silvey stated that although he did not use drugs, he decided he would sell drugs to inmates in order to make more money. Silvey further testified that in June 1990, after his conversations with Lewis, a supervising officer initiated contact with him concerning Lewis. Silvey said that he had not informed prison officials of his contacts with Lewis at the time they approached him and that he was initially hesitant to cooperate with them. He decided to cooperate when they said "they would help [Silvey] if [he] helped them" and promised to "get [Silvey] paroled if [he] helped them." Silvey testified that he then approached Lewis and re-initiated discussions about buying marijuana.

On September 30 at 6 p.m., more than three months after Silvey said Lewis approached him, Silvey was given $150 by a corrections official in order to purchase marijuana. The money had been treated with a substance that is visible only under a fluorescent light. Silvey testified that he gave the money to Lewis while Lewis was inside his guard post and that Lewis put the money in his pocket. Corrections officials testified that Silvey telephoned them at 7:40 p.m. and said he

had given the money to Lewis. Silvey said Lewis was to deliver the marijuana to him that same night.

The evidence further proved that Lewis took his scheduled leisure break at 8 p.m. At the conclusion of his break, Lewis left the administration building and was walking toward the gate to enter the inmate compound when he was stopped, arrested, and searched. The marked money was in Lewis' pocket with $71 of Lewis' own money. Lewis' hands, the money, and the pocket in which Lewis had put the money all showed signs of the substance used to treat the $150. Lewis consented to a search of his living quarters and his vehicle. No marijuana or other illegal contraband was found on Lewis' person or among his possessions.

Lewis was advised of *Miranda* rights and was questioned. Lewis stated that during his work shift, he was relieved by another person, who he refused to identity, and left the guard post to get a drink of water. He stated that when he returned, he found the money in a desk drawer inside the guard post. Lewis said he had intended to inform his supervisor of the money at the end of his shift.

At trial, Lewis testified that he found the money in the desk drawer inside the guard post. He testified that he routinely left the door to the guard post open when he made rounds within the immediately adjacent inmate dormitory. He also testified that cleaning supplies were stored in one of the two rooms that comprise the guard post and that inmates were routinely allowed access to that room to get the cleaning supplies. He denied that he offered or intended to deliver marijuana to Silvey. On this evidence, Lewis was convicted of attempting to deliver marijuana to Silvey and fined $2500.

## II.

■ "It is well established that an attempt is composed of two elements: the intention to commit the crime, and the doing of some direct act towards its consummation which is more than mere preparation but falls short of execution of the ultimate purpose." *Sizemore v. Commonwealth*, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978). The evidence must prove "an overt but ineffectual act committed in furtherance of the criminal purpose." *Howard v. Commonwealth*, 221 Va. 904, 906, 275 S.E.2d 602, 603 (1981).

It is impossible to formulate a rule which will be a definite and unbending guide in determining what acts constitute preparation

and what acts amount to legal attempts. "In a general way, however, it may be said that preparation consists in devising or arranging the means or measures necessary for the commission of the offense and that the attempt is the direct movement toward the commission after the preparations are made."

*Granberry v. Commonwealth*, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946).

■ The Commonwealth failed to prove an act done in furtherance of a delivery. No evidence proved that Lewis possessed marijuana, that Lewis made arrangements to secure marijuana, or that Lewis did any other thing connecting his possession of the money to marijuana. While it is not necessary to show that the conduct was thwarted at the instant of consummation, the evidence must prove that the preparation proceeded "far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." *Barrett v. Commonwealth*, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969).

Preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature.

*People v. Buffum*, 40 Cal. 2d 709, 718, 256 P.2d 317, 321 (1953).

Relying upon *United States v. Mandujano*, 499 F.2d 370 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114 (1975), and *United States v. DeRosa*, 670 F.2d 889 (9th Cir.), *cert. denied*, 459 U.S. 993 (1982), the Commonwealth asserts that Lewis' possession of the money was sufficient to prove he attempted to distribute marijuana. We disagree. In *Mandujano*, the defendant received money but also announced his departure to find a source for the drugs, leaving the undercover officer in the defendant's place of business in the presence of defendant's wife. When the defendant returned without the drugs, the defendant informed the undercover officer that he could not locate his contact. The defendant then returned the money to the undercover officer and offered to consummate the delivery when his regular supplier arrived two hours later. 499 F.2d at 371-72. Thus, in *Mandujano* the evidence proved more than mere preparation. In addition to possession of the money, the evidence proved acts done toward consummation of the offense, *and* the defendant's conduct was not equivocal. *Id.* at 376-77.

In *DeRosa*, the defendants claimed that the evidence did not prove an attempted drug distribution. The evidence proved that one defendant made arrangements for the co-defendant to sell drugs to an undercover agent. The co-defendant insisted upon viewing the money and in fact went to view the money before the delivery. The defendant met the undercover purchaser later that night at a prearranged site and announced that he was going directly to meet the co-defendant to obtain the drugs. The defendant went to a nearby restaurant and met with the co-defendant. The defendant and the co-defendant told the undercover officer that they could not complete the deliveries because they detected police surveillance. 670 F.2d at 894. The evidence in *DeRosa* further proved that on several occasions prior to the event at issue, the defendants distributed cocaine, distributed oxycodone, a controlled substance, and conspired with each other to distribute heroin. *Id.* at 892 n.4. Thus, in *DeRosa* several acts were proved that were leading directly to consummation of the offense, *and* the conduct of the defendants was not equivocal. *Id.* at 894.

The gravamen of the charged offense is that Lewis did some act beyond mere preparation and that the act was done in furtherance of the delivery of marijuana. Although both *Mandujano* and *DeRosa* demonstrate that actual possession of the contraband is not required to establish the offense, the Commonwealth, in this case, proved no conduct or statement by Lewis that indicates more than mere preparation. Moreover, Lewis' conduct was at best equivocal. Although the trial judge denied Lewis' motion to strike the evidence, the trial judge aptly observed that the delivery of money "could also be evidence of a shakedown type fraud practiced by this guard on the inmates in which he never had any intention to deliver marijuana, but simply was getting money from them knowing that they couldn't then report him." The evidence in this record is consistent with that hypothesis. Thus, the proof concerning Lewis' conduct is equivocal and does not establish more than mere preparation.

For these reasons, we reverse the conviction.

*Reversed.*

Coleman, J., and Fitzpatrick, J., concurred.